IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD A. MCANULTY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2:22-cv-1440 |
| ) | |
| v. ) | |
| ) | Magistrate Judge Patricia L. Dodge |
| ) | |
| MELINDA ADAMS, LESLEY ANN ) | |
| COMO, KATHLEEN KOCHERZAT, ) | |
| TAMMY MCGRANAHAN, ) | |
| ED WHITMAN, NICOLE FRANZ, ) | |
| ROBERT GRAVES, MR. FARMINTINO, ) | |
| and MR. LAUFER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**[1]

Presently before the Court are two motions to dismiss: a motion filed by Melinda Adams, Lesley Ann Como, Kathleen Kocherzat, Tammy McGranahan, Ed Whitman, Nicole Franz, Robert Graves, and Mr. Laufer, ("the Corrections Defendants"), ECF No. 16, and a motion filed by Mr. Farmintino,[2] ECF No. 31. For the reasons that follow, these motions will be granted.

**I.   Introduction**

Plaintiff Richard A. McAnulty, an inmate at the State Correctional Institution at Mercer, brings this *pro se* civil rights action under 42 U.S.C. § 1983, raising claims against the Corrections Defendants and Mr. Farmintino, asserting violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. ECF No. 9.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

[2] The correct name of this defendant is Rocky Farmartino. ECF No. 31 at 1.

On May 23, 2023, the Corrections Defendants filed their Motion to Dismiss and a Brief in support, ECF Nos. 16, 17, to which McAnulty filed a Brief in Opposition to the Motion to Dismiss. ECF No. 23. On October 6, 2023, Farmintino filed his Motion to Dismiss and a Brief in support. ECF Nos. 31, 32. McAnulty filed a Brief in Opposition on October 26, 2023. ECF No. 36.

The Motions to Dismiss are ripe for consideration.

## II.     Factual Allegations

As pleaded in the Complaint, McAnulty was a Certified Peer Support Specialist ("CPSS") in the Veterans Service Unit ("VSU") at S.C.I. Mercer. ECF No. 9 at 1. In July of 2021, a new management team took over the VSU. *Id.* ¶ 18. At a VSU meeting on December 30, 2021, the new VSU Manager, Tammy McGranahan, accused McAnulty of disrupting the meeting through his eye movement and his body language, and informed him that he would be called into her office later. *Id.* ¶ 27.

On January 5, 2022, McAnulty was called into McGranahan's office to explain his actions during the meeting. ECF 9 ¶ 29. When McAnulty attempted to explain that he wasn't aware of any disruptive actions on his part, McGranahan "gruffly demanded" that he look her in the eyes, which was difficult and painful for McAnulty to do due to multiple cervical operations he has undergone. *Id.* McGranahan then told him that he would never facilitate another workshop on her unit. *Id.* The next day, per McGranahan's direction, McAnulty cancelled a VSU workshop he had planned and posted for sign-ups. *Id.* ¶¶ 26, 30.

At a VSU meeting on January 13, 2022, when seeking comments from the group on her proposal to bring a non-veteran inmate into the VSU, McGranahan skipped over McAnulty's raised hand, instead "sternly, harshly, and demeaningly stating 'I'll get to you McAnulty.'" ECF 9 ¶ 31. When McAnulty later "assertively" disagreed with another inmate, causing that inmate to

2

leave the meeting, McGranahan chastised him in front of his peers, at which time he stated that "he was done being scolded," and left the room. *Id.*

McAnulty was called into McGranahan's office on January 18, 2022. ECF 9 ¶ 32. Farmintino, a social worker in the VSU, was also there. *Id.* McGranahan told McAnulty that he had disrupted the meeting and that his comments to the other inmate were disrespectful. *Id.*

Ten days later, correctional officer Gladis told McAnulty to pack his belongings and that he was being removed from the VSU. *Id.* ¶ 34. McAnulty was then called to the Psychology Department on February 7, 2022, where he met with psychologist Kathleen Kocherzat and P.S.S. Mr. Ruffo and was informed that it had been "voted on" that he had been removed from his status as a CPSS. *Id.* ¶ 35. On February 9, 2022, block counselor Graves notified McAnulty that he had been removed from the VSU but he could reapply in one year. *Id.* ¶ 37. When McAnulty asked why he had been removed, Graves told him, "You know why." *Id.*

McAnulty filed multiple grievances about these events. *Id.* ¶¶ 39-43. He also asked Laufer, a psychologist, multiple times for the continuing education units necessary to maintain his certification as a CPSS, but Laufer failed to supply the needed documents. *Id.* ¶ 44.

**III.   Legal Standards**

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. Further, in considering a motion to dismiss, the court generally considers only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citations omitted).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Court is not limited to the arguments presented in the motion to dismiss but may *sua sponte* consider the adequacy of a complaint pursuant to the screening provisions of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"). *See*, *e.g.*, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.11 (3d Cir. 2022) (explaining that the PLRA's screening provisions at 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c) are "applicable throughout the entire litigation process.") (internal quotation and citation omitted); *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588-89 (W.D. Pa. 2008) (the court may *sua sponte* rest its dismissal upon a ground not raised in a motion to dismiss pursuant to the screening provisions of the PLRA).

Finally, "[a] document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

**IV.     Analysis**

    A.     <u>Official Capacity Claims</u>

McAnulty has sued all of the defendants in their individual capacities but has also asserted claims against some of the Corrections Defendants in their official capacities. ECF No. 9 ¶ 4 (Adams), ¶ 8 (McGranahan), and ¶ 10 (Kocherzat). Because the Corrections Defendants are

employees of the DOC, however, any claims for monetary damages brought against them in their official capacities are barred by the immunity afforded to the Commonwealth of Pennsylvania by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution proscribes actions for damages in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). "Because the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." *Johnson v. Wenerowicz*, 440 F. App'x 60, 62 (3d Cir. 2011).

Further, claims against the Corrections Defendants in their official capacities are legally claims against the Commonwealth of Pennsylvania, and the Commonwealth is not a person that can be sued under 42 U.S.C. § 1983, even if the Eleventh Amendment permitted this Court to exercise jurisdiction over the claims. *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).

One exception to these rules is where a state official is sued for prospective injunctive relief. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 276-77 (1997) (explaining that where a suit seeks prospective injunctive relief based upon state actions alleged to violate federal law or the Constitution, such suit is not barred by the sovereign immunity clause of the Eleventh Amendment); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (reiterating that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'").

In his complaint, McAnulty seeks injunctive relief against Adams seeking reinstatement of his lost status and other prospective injunctive relief. ECF No. 9 ¶¶ 77-80. Therefore, in this respect, his claim against Adams in her official capacity is not barred by sovereign immunity.

Accordingly, with the exception of the claim against Adams for prospective injunctive relief, the claims against Corrections Defendants Adams, McGranahan and Kocherzat in their official capacities will be dismissed with prejudice.

B.    Personal Involvement

The Corrections Defendants argue that Adams, Franz, Como, Whitman, Graves, Kocherzat, and Laufer should be dismissed because McAnulty has failed to establish the personal involvement of these defendants.[3] ECF No. 17 at 5-6. Farmintino presents a similar argument concerning a lack of his personal involvement. ECF No. 32 at 4-6.

In a claim under 42 U.S.C. § 1983, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See, e.g., id.; see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Medical*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the

---

[3] Only the personal involvement of Whitman and Farmintino will be addressed in this section. The personal involvement of Adams, Franz, Como, Graves, Kocherzat, and Laufer will be discussed as necessary in conjunction with the claims raised against them.

individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The doctrine of respondeat superior, which makes an employer or supervisor automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. For that reason, supervisor-defendants cannot be held liable for every illegal act that takes in a correctional facility. They are only liable for their own conduct.

The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

1. Defendant Whitman

Whitman is identified in the Complaint as the N-Block Unit Manager who serves on McAnulty's "Management Team," ECF No. 9 ¶ 7. McAnulty does not allege a single fact concerning Whitman's involvement in any of the events described in the Complaint. In opposition to the Motion to Dismiss, McAnulty asserts a variety of roles Whitman played as a "person of incidence," and a "wrongdoer" who "entered into the Civil Conspiracy with the rest of the V.S.U. Management Team to inflict cruel and unusual multiple punishments upon [McAnulty] in Deliberate Indifference to [his] welfare." ECF No. 23 at 6. However, "[a] party may not use a responsive pleading to supplement a complaint, *Commonwealth of Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Therefore, McAnulty's statements in his brief cannot be considered in resolving the instant motion to dismiss. Even if these conclusory statements had been set forth in the Complaint, however, they would still fail to establish a plausible claim without allegations of fact to support them.

Because the Complaint does not allege any facts to support these statements, McAnulty has failed to show Whitman's personal involvement in any constitutional violation he is alleged to have experienced. Thus, McAnulty's claims against Whitman will be dismissed.

2. Defendant Farmintino

In support of his Motion to Dismiss, Farmintino argues that McAnulty has failed to allege any facts tying Farmintino to a deprivation of McAnulty's constitutional rights. ECF No. 32 at 4-6. Indeed, the sole factual allegation in the Complaint concerning Farmintino states that he was present on January 18, 2022, when McGranahan met with McAnulty in her office and when McGranahan directed Farmintino to speak he "simply followed her lead by saying how intel[i]gent [McAnulty] was." ECF No. 9 ¶ 32.

In opposition, McAnulty argues that Farmintino is "a person of incidence and wrong doer," asserting that Farmintino failed to protect McAnulty's constitutional rights under the First, Eighth, and Fourteenth Amendments when McGranahan verbally attacked McAnulty "multiple times" in Farmintino's presence. ECF No. 36 at 2.

McAnulty's allegation concerning Farmintino is insufficient to show Farmintino's personal involvement in any violation of McAnulty's constitutional rights. Farmintino's mere presence at in McGranahan's office, even assuming that he witnessed her "verbal assaults" on McAnulty without stopping her, simply does not rise to the level of a constitutional violation. The claims against Farmintino will be dismissed.

    C.    <u>First Amendment Freedom of Speech Claim</u>

McAnulty asserts a claim that his First Amendment right to freedom of speech was violated that appears to be against Defendants McGranahan and Kocherzat. ECF No. 9 ¶¶ 46-51. To establish this claim, McAnulty must allege facts plausibly showing that (1) the actions at issue impinged on his free speech rights; and (2) these acts were not reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

With respect to this claim, McAnulty merely repeats factual allegations previously set forth in the Complaint concerning the encounters he had with McGranahan from August 10, 2021, through January 18, 2022. ECF No. 9 ¶¶ 46-51. The Corrections Defendants correctly note that "[t]he threadbare nature of Plaintiff's factual allegations makes it near impossible to discern a colorable First Amendment violation, and certainly fail to meet the rigorous pleading standards employed *Twombly* and *Iqbal*." ECF No. 17 at 8-9.

While it is clear that McAnulty seeks to challenge all of McGranahan's efforts to control his behavior at VSU meetings, ranging from the tone of her voice to the placement of his chair in

relation to hers, the actual basis for this claim is unclear. That is, he does not identify what protected speech was impinged upon. Instead, he cites to times where his desire to speak was stymied by interruption or another meeting participant who was permitted to speak first.

Freedom of speech is not synonymous with an unfettered opportunity to talk. As the Corrections Defendants point out, ECF No. 17 at 9, McAnulty admits that his behavior was at times disruptive, ECF No. 9 at 22 (characterizing his expression of his opinion at VSU meeting as "assertive," and his announced departure from VSU meeting in protest to McGranahan's "threats" as a "disruption to the meeting."). These admissions beg the question of whether any perceived impingement on his free speech rights was reasonably related to the legitimate penological interests of order. In any event, McAnulty has failed to set forth sufficient well-pleaded factual allegations to plausibly give rise to an entitlement to relief.

In his Brief in Opposition to the instant Motion to Dismiss, McAnulty attempts to clarify this claim, stating:

> Defendant McGranahan violated Plaintiff's First Amendment Right to freedom of speech when she, in VSU peer group meetings, [o]n VSU Block, and in her office which at times was witnessed by Defendants Farmintino, Graves, and others. [sic] Defendant Mc[G]ranahan restricted Plaintiff's speech, eye and body movements and developed an air of conspiracy when she led the Plaintiff's Manag[e]ment Team into an erroneous disciplinary action against the Plaintiff.
>
> Defendant Kocherzat violated the Plaintiff's Constitutional right of free speech when she wrongly dismissed Plaintiff from his CPSS position depriving him of his ability to work in his professional arena of serve to others in need, as a CPSS.

ECF No. 23 at 11-12.

While these paragraphs fail to identify the nature of any claim against McGranahan, they clearly demonstrate that McAnulty has no claim against Kocherzat for a violation of his free speech

rights. Even assuming that it was Kocherzat who dismissed him from his position, a fact which is not clearly alleged in the Complaint, McAnulty had no free speech right to his position.

The Corrections Defendants' Motion to Dismiss will be granted as to this claim.

D.     Due Process

In order to state a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)). In the prison context, deprivation of a legally cognizable liberty interest occurs when the prison imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

1. Defendants McGranahan, Graves, Farmintino, and Kocherzat

McAnulty asserts that his constitutional right to due process was violated by McGranahan, Graves, Farmintino,[4] and Kocherzat when he was removed from his position as a CPSS and from the VSU without notice or a hearing. ECF No. 9 ¶¶ 54-59.

Defendants argue that no due process violation occurred because McAnulty did not have a liberty interest in either his housing on the VSU or in his employment as a CPSS. ECF No. 17 at 13-15; ECF No. 32 at 12-14. Indeed, a prisoner has no constitutional right "to be confined in any particular housing unit in a prison." *Fantone v. Latini*, 780 F.3d 184, 186 (3d Cir. 2015). Further,

---

[4] As set forth above, McAnulty has not sufficiently alleged Farmintino's personal involvement in any violation of his constitutional rights; however, this claim against him could also be dismissed on the basis identified here.

there is no constitutionally protected interest in a prison job. *Presbury v. Wenerowicz*, 472 F. App'x 100, 101 (3d Cir. 2012).

In opposition, McAnulty argues that the "atypical and significant hardship" imposed upon him was that his "purpose in life was taken without reason." ECF No. 23 at 13. This simply does not represent a basis for a due process claim. McAnulty has no constitutionally protected interest in a life purpose. Absent such an interest, he cannot state a plausible due process claim.

2. <u>Defendants Franz, Como, and Adams</u>

McAnulty also raises a due process claim against Franz, Como, and Adams for their roles in processing the grievances he filed following his removal from the VSU. ECF No. 9 ¶¶ 60-63. This claim also fails.

First, allegations of personal involvement after the fact cannot support personal involvement in the incident itself. *See*, *Rode*, 845 F.2d at 1208 (involvement in disposing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (plaintiff's allegation that prison officials responded inappropriately, or failed to respond to a prison grievance, did not establish that the official was involved in the underlying unconstitutional conduct).

Further, is well-established that "prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005); *see also Pittman v. Corbett*, 2014 WL 783498, at *3 (E.D. Pa. Feb. 27, 2014) ("[T]o the extent plaintiff's claims are based on the defendant's denials of grievances and/or inadequacies in and

13

dissatisfaction with the grievance process, he has not stated a constitutional claim."). Because he has no constitutionally protected interest in the grievance process, McAnulty cannot state a due process claim based on perceived errors in this process.

Thus, because McAnulty did not have a constitutionally protected interest in his job, his housing unit, or the grievance process, his due process claim based on deprivations thereof will be dismissed.

E.  Retaliation

To succeed on a claim for retaliation under the First Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

McAnulty's retaliation claims are varied. He first asserts that McGranahan's decision to prohibit him from facilitating VSU workshops was in retaliation for his "protected right to free speech." ECF No. 9 ¶ 67. He further asserts that she wrote false disciplinary reports against him "in retaliation for his freedom of speech." *Id.* ¶ 69. As set forth above, McAnulty has not established a plausible claim that his right to freedom of speech was violated. Thus, to the extent that this claim is based upon such a violation, it fails. As to the disciplinary reports, the Complaint lacks any factual allegations to support this portion of the claim, and similarly, fails to state a claim.

McAnulty next asserts Graves "acted in a retaliatory manner when he refused to notify" McAnulty why he was being removed from the VSU. ECF 9 ¶ 70. Graves is identified in the Complaint as McAnulty's counselor who also serves on his "Management Team." ECF No. 9 ¶ 9. McAnulty alleges that Graves informed him on February 9, 2022, that he was removed from the

VSU but could reapply in a year. When McAnulty asked why, Graves stated, "You know why." *Id.* ¶ 37. Significantly, however, McAnulty does not allege that Graves had any role in effecting his removal from the VSU. Thus, the only alleged retaliation is Graves's failure to fully explain to McAnulty the reason for his removal more than a week after McAnulty was first notified of such removal, *id.* ¶ 34. Any failure to do so, however, is simply not a retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

In addition, according to McAnulty, Whitman, McGranahan, Graves, Kocherzat, and Farmintino entered into a "retaliatory agreement" that imposed atypical and significant hardship on McAnulty in retaliation for his right to free speech. *Id.* ¶ 71. There are no factual allegations in the Complaint that support this conclusory and vague statement.

McAnulty also asserts that Laufer retaliated against him by discontinuing the continuing education units required to maintain his CPSS certification. *Id.* ¶ 73. In support of this claim, he attaches to the Complaint a request he sent to Laufer stating, "I asked you if I could continue to receive the CEUs last month. Have you received an answer from Dr. K yet?" ECF No. 9-7. In response, Laufer states, "There is no definitive answer at this time." *Id.* This response fails to show that Laufer discontinued McAnulty's continuing education units or, for that matter, took any retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

Finally, in his Brief in Opposition to the Corrections Defendants' Motion to Dismiss, McAnulty adds a list of alleged retaliatory events which have occurred subsequent to the filing of the Complaint. ECF No. 23 at 14-15. These allegations are not properly before the Court at this time, but at any rate, it is notable that McAnulty attributes the retaliatory acts only to "many of

SCI Mercer's staff." *Id.* This vague statement does not allege the personal involvement of any of the named Defendants.

Thus, the retaliation claims asserted in the Complaint will be dismissed.

F.        <u>Deliberate Indifference</u>

McAnulty asserts that McGranahan's "unlawful abuse of power and mistre[a]tment of [him] explained by the defendants [sic] actions resulting in pain and suffering of plaintiff." ECF No. 9 ¶ 76. The sole mention of any pain and suffering in the Complaint is an allegation that it is painful for McAnulty to raise his head "at elevated angles," and that McGranahan demanded that he look her in the eyes in their January 5, 2022, meeting. *Id.* ¶ 29. It is unclear whether this allegation is the basis for this claim.

To demonstrate the existence of deliberate indifference to a risk of harm, a prison official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). "A prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 825. The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

In support of their motion, the Corrections Defendants note that McAnulty's cervical problems appear to be the basis for this claim. Given that assumption, they note that McAnulty fails to allege that McGranahan was aware of these problems or that she disregarded any risk to him. ECF No. 17 at 18. While this argument is persuasive, McAnulty sets forth a different basis for this claim in his Brief in Opposition to the Motion to Dismiss, asserting:

> All DOC Defendants are fully aware of Plaintiff's multiple serious illments [sic]. Plaintiff has had three cervical operations that restrict the movement of his head. Plaintiff also has past trauma that results in PTSD nightmares. All Plaintiff's illness and injuries are noted on Plaintiff's inmate record and are made aware to all DOC employees. The physical and mental pain inflicted by DOC Defendants has caused Plaintiff to regress in his rentry [sic] and recovery efforts. The punishments by All DOC Defendants has resulted in Plaintiff being subjected to physical and mental injuries. Plaintiff was intentionally deprived of minimal civilized measures of life's necessities by being housed in an uninhabitable cell for months. This occurred after the filing of this complaint and in direct cause of being wrongly removed from the VSU. Plaintiff was also assaulted and received a facial scar, when a Parole Violator half his age was placed in Plaintiff's cell and then given 300 M.G. of Saboxin [sic] in his stomach and an additional dose of 60 M.G. orally due to his withdraw[al] from street drugs, without informing Plaintiff that his cellie was a junkie, violent, and high on his medications. These retaliatory prison conditions deprived Plaintiff of "the minimal civilized measures of life's necessities and these deprivations were sufficiently serious in that they adversely affected Plaintiff's physical and mental health. The d[e]liberate indifference of DOC Defendants subjected him to that deprivation when they punished him unnecessar[i]ly. Plaintiff was denied reasonable safe housing conditions that were known to exist and the likel[i]hood that such injury to health will actually be caused.

ECF No. 23 at 13-14.

Nonetheless, McAnulty's claim fails for multiple reasons. First, it relies on facts which were not alleged in the Complaint.[5] Even if these facts had been alleged in the complaint, and were considered, McAnulty fails to identify any individual defendant's personal involvement. Finally, even if McAnulty had alleged that all defendants were both aware of his medical history and responsible for his transfer from the VSU to general population, McAnulty has failed to plead facts that support a claim that any defendant knew of and disregarded a risk to McAnulty's health and safety that would follow from these actions.

Thus, this claim will also be dismissed.

---

[5] These allegations could not have been included in the Complaint because, by McAnulty's admission, the events described occurred after the filing of the Complaint. ECF No. 23 at 14.

G. <u>Amendment</u>

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Because McAnulty cannot circumvent the identified immunity of the Corrections Defendants in their official capacities, it would be futile to permit amendment in that respect. However, the Court cannot conclude that it would be futile or inequitable to permit McAnulty to file an amended complaint to remedy the other deficiencies identified herein.

**V.  Conclusion**

For these reasons, the Motion to Dismiss filed by the Corrections Defendants, ECF No. 16, will be granted with prejudice as to the claims against Adams, McGranahan, and Kocherzat in their official capacities with the exception of the claim against Adams for prospective injunctive relief, and granted without prejudice and with leave to amend in all other respects.

The Motion to Dismiss filed by Mr. Farmintino, ECF No. 31, will be granted without prejudice and with leave to amend. An appropriate Order follows.

Dated:  November 6, 2023                           BY THE COURT:

                                                                    /s/ Patricia L. Dodge
                                                                    PATRICIA L. DODGE
                                                                    UNITED STATES MAGISTRATE JUDGE