IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD A. MCANULTY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MELINDA ADAMS, LESLEY ANN ) <br> COMO, KATHLEEN KOCHERZAT, ) <br> TAMMY MCGRANAHAN, ) <br> ED WHITMAN, NICOLE FRANZ, ) <br> ROBERT GRAVES, ROCKY ) <br> FARMINTINO, ) <br> and PSYCHOLOGIST LAUFER, ) <br> ) <br> Defendants. ) | Civil Action No. 2:22-cv-1440 <br><br> Magistrate Judge Patricia L. Dodge |

**MEMORANDUM OPINION**[1]

Presently before the Court are two motions to dismiss: one filed by Defendants Melinda Adams, Lesley Ann Como, Kathleen Kocherzat, Tammy McGranahan, Ed Whitman, Nicole Franz, Robert Graves, and Psychologist Laufer, ("the Corrections Defendants") (ECF No. 48), and a second motion filed by Defendant Rocky Farmintino[2] (ECF No. 46). For the reasons that follow, both motions will be granted.

**I.    Introduction**

Plaintiff Richard A. McAnulty, an inmate at the State Correctional Institution at Mercer, brings this *pro se* civil rights action under 42 U.S.C. § 1983, raising claims against the Corrections Defendants and Farmartino, asserting violations of his rights under the First, Eighth, and

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

[2] As this defendant has indicated, the correct spelling of last name is "Farmartino." (ECF No. 46 at 1.)  The correct spelling will be used in this opinion.

Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA")

In response to McAnulty's original Complaint (ECF No. 9), the Corrections Defendants and Farmartino filed Motions to Dismiss. (ECF Nos. 16 and 31.) This Court granted these motions, dismissing claims against certain Defendants in their official capacities with prejudice and dismissing all other claims without prejudice and with leave to amend. (ECF Nos. 42 and 43.) McAnulty subsequently filed the operative Amended Complaint. (ECF No. 44.)

On March 11, 2024, the Corrections Defendants filed their Motion to Dismiss the Amended Complaint and a Brief in support. (ECF Nos. 48, 49.) On the same date, Farmartino filed a Motion to Dismiss the Amended Complaint and a supporting Brief. (ECF Nos. 46, 47.) McAnulty filed a Brief in Opposition to both motions to dismiss. (ECF No. 52).  Thus, the motions to dismiss are ripe for consideration.

**II.    Factual Allegations**

As pleaded in the Amended Complaint, McAnulty was a participant in the Guardian Angels Service Dog Program and a Certified Peer Support Specialist ("CPSS") in the Veterans Service Unit ("VSU") at S.C.I. Mercer. (ECF No. 44 ¶¶ 14, 28.) In July of 2021, a new management team took over the VSU. (*Id.* ¶ 15.) At a VSU meeting on December 30, 2021, the new VSU Manager, Tammy McGranahan, accused McAnulty of disrupting the meeting through his eye movements and body language, and informed him that he would be called into her office later. (*Id.* ¶ 24.)

On January 5, 2022, McAnulty was called into McGranahan's office to explain his actions during the meeting. (*Id.* ¶ 26.) When McAnulty attempted to explain that he wasn't aware of any disruptive actions on his part, McGranahan "gruffly demanded" that he look her in the face, which was difficult and painful for McAnulty to do due to multiple cervical operations he has undergone.

2

(*Id.*) McGranahan then told him that he would never facilitate another workshop on her unit. (*Id.*) The next day, per McGranahan's direction, McAnulty cancelled a VSU workshop he had planned and posted for sign-ups. (*Id.* ¶ 27.)

During a VSU meeting on January 13, 2022, McGranahan skipped over McAnulty's raised hand while seeking comments from the group on her proposal to bring a non-veteran inmate into the VSU. Instead, she "sternly, harshly, and demeaningly stating 'I'll get to you McAnulty.'" (*Id.* ¶ 28.) When McAnulty later "assertively" disagreed with another inmate, causing that inmate to leave the meeting, McGranahan chastised him in front of his peers, at which time he left the room. (*Id.*)

McAnulty was again called into McGranahan's office on January 18, 2022. (*Id.* ¶ 29.) Farmartino, a social worker in the VSU, was also there. (*Id.*) McGranahan told McAnulty that he had disrupted the meeting and that his comments to the other inmate were disrespectful. (*Id.*)

Ten days later, correctional officer Gladis told McAnulty to pack his belongings and that he was being removed from the VSU. (*Id.* ¶ 31.) McAnulty was then called to the Psychology Department on February 7, 2022, where he met with psychologist Kathleen Kocherzat and P.S.S. Mr. Ruffo and was informed that it had been "voted on" that he had been removed from his status as a CPSS. (*Id.* ¶ 32.)

On February 9, 2022, block counselor Graves notified McAnulty that he had been removed from the VSU but he could reapply in one year. (*Id.* ¶ 33.) When McAnulty asked why he had been removed, Graves told him, "You know why." (*Id.*)

McAnulty filed multiple inquiries and grievances about these events. (*Id.* ¶¶ 34-39.) He also asked Laufer, a psychologist, multiple times for the continuing education units necessary to maintain his certification as a CPSS, but Laufer failed to supply the needed documents. (*Id.* ¶ 40.)

**III.     Legal Standard**

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. Further, in considering a motion to dismiss, the court generally considers only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citations omitted).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Court is not limited to the arguments presented in the motion to dismiss but may *sua sponte* consider the adequacy of a complaint pursuant to the screening provisions of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"). *See*, *e.g.*, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.11 (3d Cir. 2022) (explaining that the PLRA's screening provisions at 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c) are "applicable throughout the entire litigation process.") (internal quotation and citation omitted); *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588-89 (W.D. Pa. 2008) (the court may *sua sponte* rest its dismissal upon a ground not raised in a motion to dismiss pursuant to the screening provisions of the PLRA).

Finally, "[a] document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Nevertheless, "*pro se* litigants still must allege

sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

## IV. Analysis

### A. Civil rights claims previously dismissed

In analyzing McAnulty's original Complaint after Defendants had filed motions to dismiss, the Court found that he failed to allege sufficient facts to establish the civil rights claims he attempted to plead. (ECF No. 37 at 7-17.) As Defendants correctly assert in their present motions, McAnulty has failed to allege any additional facts in his Amended Complaint.

Because McAnulty alleges only facts that were previously determined to be insufficient to support the civil rights claims he has asserted, he has failed to state any claim upon which relief may be granted. As a result, his claims under the First, Eighth, and Fourteenth Amendments will be dismissed for the same reasons articulated in the Court's Memorandum Opinion of November 6, 2023. (ECF No. 37.)

### B. Americans with Disabilities Act and Rehabilitation Act Claims

In his Amended Complaint, McAnulty asserts for the first time claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Under the ADA, no qualified individual with a disability may be excluded from participation in the programs of a public entity by reason of his disability. 42 U.S.C. § 12132. The standard for liability under the RA is the same. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 n.12 (3d Cir. 2007). Thus, to state a discrimination claim under these Acts, a plaintiff must allege that he is a qualified individual with a disability who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity by

reason of that disability. *Kokinda v. Pennsylvania Dep't of Corr.*, 779 Fed. Appx. 944, 950 (3d Cir. 2019) (citing *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018)).

The Corrections Defendants argue that McAnulty has failed to allege that he was denied services, programs, or activities on the basis of a disability. (ECF No. 49 at 15.) The sole disability McAnulty mentions in his Amended Complaint is a loss of range of motion to his head which makes it difficult for him to raise his head at elevated angles. (ECF No. 44 ¶ 26.) He alleges that, despite McGranahan's knowledge of this disability, as well as "multiple" unidentified "physical and mental illnesses" from which he suffers, she insisted he raise his head to look her in the eyes. (*Id.* ¶ 43.) Even assuming for the sake of argument that he has pleaded the existence of a disability under the ADA or RA, however, he does not allege that he was denied services, programs, or activities on the basis of this disability. Notably, he does not contend that he was removed from the VSU because he could not look someone in the eyes.

Because McAnulty has failed to state a plausible claim for relief against any of the Defendants under the ADA or the RA, these claims will be dismissed.[3]

Farmintino argues that these claims are improperly brought against him in his individual capacity. (ECF No. 47 at 18-21.) The class of defendants against whom a claim may be brought for a violation of either Title II of the ADA or § 504 of the RA is limited. Although the United States Court of Appeals for the Third Circuit has not addressed the issue precedentially, it has approvingly cited "decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA." *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002*). See, e.g.,*

---

[3] As previously discussed, although Farmartino did not address this issue in his motion, the Court may *sua sponte* consider the adequacy of a complaint pursuant to the screening provisions of the PLRA. Similarly, the Court may also analyze Farmartino's alternative argument regarding dismissal of the ADA and RA claims with respect to all Defendants.

*Matthews v. Pennsylvania Dep't of Corr.*, 613 Fed. Appx. 163, 170 (3d Cir. 2015) ("Title II of the ADA does not provide for suits against state officers in their individual capacities"). Similarly, unless an individual defendant is a direct recipient of federal financial aid, such defendant cannot be liable for claims under the RA. *See, e.g., Emerson*, 296 F.3d at 190 ("Because the individual defendants do not receive federal aid, Emerson does not state a claim against them under the Rehabilitation Act."); *Palmer v. Watterson*, 2021 WL 640637, at *6 (W.D. Pa. Jan. 29, 2021) ("neither the ADA nor RA provides a private right of action for damages against individual defendants"), report and recommendation adopted, 2021 WL 633430 (W.D. Pa. Feb. 18, 2021).

Therefore, as neither Farmartino nor the Corrections Defendants can be individually liable under the ADA or RA, they are entitled to dismissal of McAnulty's ADA and RA claims against them on this basis as well.

C. <u>Amendment</u>

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

It would be futile to permit McAnulty to file another amended complaint. Despite dismissal of his original Complaint without prejudice and with leave to amend, he has failed to cure the deficiencies in his original Complaint. His Amended Complaint relies on the same set of facts and fails to plausibly plead any civil rights claims against any of the Defendants.

With respect to his ADA and RA claims, it is evident from his own factual allegations that McAnulty's dismissal from the VSU was not as a result of any disability, and none of the Defendants can be individually liable for claims under the ADA and RA.

## V.     Conclusion

For these reasons, the Motion to Dismiss filed by Melinda Adams, Lesley Ann Como, Kathleen Kocherzat, Tammy McGranahan, Ed Whitman, Nicole Franz, Robert Graves, and Psychologist Laufer (ECF No. 48) will be granted. Further, the Motion to Dismiss filed by Rocky Farmartino (ECF No. 46) will also be granted.

An appropriate Order follows.

Dated:  November 18, 2024                             BY THE COURT:


/s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE